UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| SACRAMENTO PUBLIC LIBRARY AUTHORITY,<br><br>Plaintiff,<br><br>v.<br><br>SACRAMENTO PUBLIC LIBRARY FOUNDATION; APRIL L. JAVIST, its Executive Director; and JAMES DEERINGER, its President,<br><br>Defendants. | No. 2:20-cv-00678-WBS-KJN<br><br><u>MEMORANDUM AND ORDER RE: DEFENDANTS' MOTION TO DISMISS</u> |

----oo0oo----

Plaintiff Sacramento Public Library Authority (the "Library" or "Authority") filed this action against defendants Sacramento Public Library Foundation (the "Foundation"), April L. Javist, and James Deeringer, alleging various trademark infringement and misrepresentation claims arising out of the Foundation's unauthorized use of the Library's name and mark. Before the court is defendant's motion to dismiss. (Docket No. 8.)

I. Relevant Allegations and Factual Background

Plaintiff Sacramento Public Library Authority is a joint powers authority formed by the County of Sacramento and the Cities of Citrus Heights, Elk Grove, Galt, Isleton, Rancho Cordova, and Sacramento. (Compl. ¶ 1 (Docket No. 1).) The Authority operates and controls the Sacramento Public Library. (Id.)

According to the allegations of the Complaint, the Library has used the mark "Sacramento Public Free Library" for its library services since at least as early as 1900. (Id. ¶ 8.) Soon after, the Library became known as The Sacramento Public Library and that mark became associated with the Library by the public. (Id. ¶ 9.) Since at least as early as 1977, the Library shortened its name and mark to Sacramento Public Library and has continuously used it since. (Id.)

The Foundation is a nonprofit corporation. (Id. ¶ 12.) Defendants Javist and Deeringer are the Executive Director and President of the Foundation, respectively. (Compl. ¶¶ 3-4.) The Foundation was formed in June 1984 for the sole purpose of funding the Library. (Id. ¶ 12.) At the time of its formation, the Library gave the Foundation permission to make limited use of the Library's mark for the purpose of fundraising for the library. (Id.) The Foundation therefore had permission to call itself the Sacramento Public Library Foundation. (Id.)

In or about 2004, the Foundation and the Library executed a Memorandum of Understanding ("MOU") that expressly stated the purpose of the foundation –- to support and fund the Library -- and set forth the terms of the relationship between

the two parties. (Id. ¶ 19.) Around 2013, however, the Foundation began to fund activities and programs outside of the Library without the Library's knowledge or permission. (Id. ¶¶ 13, 20) The Library objected to this change. (Id.) The parties were unable to resolve their differences, and, in April 2015, the Foundation sent a letter to the Library unilaterally terminating the MOU. (Id. ¶ 21.) On April 17, 2017, the Foundation amended its Articles of Incorporation to expand upon the Foundation's specific purpose. (Id. ¶ 23.) That purpose is now "to raise funds to support and promote the activities and programs of the Sacramento Public Library and community literacy programs." (Id.)

Once the Foundation began to support other programs, the Foundation's support for the Library became secondary. (Id. ¶¶ 29-31). The Foundation was therefore supporting programs and activities other than the Library while still using the Library's mark. (Id. ¶ 31.) In 2014, for example, the Foundation established the Children's Literacy Endowment. (Id. ¶ 32.) The Foundation has since effectively ceased raising funds for the endowments it holds for the benefit of the Library, and instead raises funds solely for the Children's Literacy Endowment. (Id. ¶ 33.) As a result, the Library's endowments have become stagnant. (Id. ¶ 34.) Indeed, unless a donor expressly directs their donation to the Library, the Library does not receive any benefit from the donation at all. (Id. ¶ 37, 38-40.)

Further, despite the deteriorating relationship between the Library and the Foundation, the Foundation did not advise donors that it had terminated its MOU with the Library and that

it was therefore no longer associated with the Library. (Id. ¶ 22, 26.) The Foundation's audited financial statements for fiscal years 2016-17 and 2017-28 continue to state that the "Foundation raises funds for the Sacramento Public Library." (Id. ¶ 27.)

Eventually, the Library informed the Foundation that it no longer had permission to use the Library's mark because it did not qualify as a recognized fundraising partner of the Library. (Id. ¶ 14, 43.) The Foundation nonetheless continued to use the mark and to promote itself as a fundraising partner of the Library, without informing donors about the end of the parties' relationship. (Id. ¶ 15, 43, 44.) In March 2020, the Foundation's Board voted to eliminate the Chair of the Sacramento Public Library Authority as an ex-officio member of the Foundation's Board, to eliminate the Library's representative from the Foundation Finance Committee, and to remove the Library's Director as the Library's Liaison to the Foundation. (Id. ¶ 47.)

Plaintiff filed suit alleging the following eight causes of action: (1) violation of Section 43(a) of the Lanham Act, 15 U.S.C. §§ 1051 et seq.; (2) violation of California common law for trademark infringement and unfair competition; (3) violation of Section 17200 of California's Unfair Competition Law ("UCL"); (4) violation of Section 17500 of the UCL; (5) fraudulent and intentional misrepresentation; (6) negligent representation; (7) accounting; and (8) appointment of a receiver. (See generally Compl.)

II. Legal Standard

On a Rule 12(b)(6) motion, the inquiry before the court is whether, accepting the well-pleaded allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor, the plaintiff has stated a claim for relief that is plausible on its face. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The court, however, is "not required to accept as true allegations . . . that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC, 733 F.3d 1251, 1254 (9th Cir. 2013). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

## III. Discussion

### A. Claims One and Two for Trademark Infringement

#### 1. Seniority of Use

"The first to use a mark is deemed the 'senior' user and has the right to enjoin 'junior' users from using confusingly similar marks in the same industry and market or within the senior user's natural zone of expansion." Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp., 174 F.3d 1036, 1047 (9th Cir. 1999) (citing Union Nat'l Bank of Tex., Laredo, Tex. v. Union Nat'l Bank of Tex., Austin, Tex., 909 F.2d 839, 842–43 (5th Cir. 1990); Tally–Ho, Inc. v. Coast Community College Dist., 889 F.2d 1018, 1023 (11th Cir. 1989); New West Corp. v. NYM Co. of Cal., 595 F.2d 1194, 1200–01 (9th Cir. 1979)).

Defendants argue that the Foundation began using the mark at issue before the Library did and that it is therefore the senior user of the mark. In support, defendants cite the Joint

Exercise of Powers Agreement Sacramento Public Library Authority ("JPA Agreement"). (Docket No. 8-2.) The agreement created the Sacramento Public Library Authority, a public agency, in 1993 (See id. at 4-5, 21; Cal. Gov't Code §§ 6500, et seq.) Because the Foundation has used the mark since 1984 (Compl. ¶ 12), and because the Agreement "does not include any provision setting forth any contribution of assets from any predecessor public library" (Mot. at 15 n.7), defendants argue that the Foundation is the senior user of the mark and is entitled to its use.

The existence of the JPA Agreement alone, however, is insufficient for the court to dismiss plaintiff's claims on the basis of seniority. First, the allegations of the Complaint sufficiently state that the mark has been in use since before the founding of the Foundation. Plaintiff alleges that an entity known as the Sacramento Public Library has been known as such since 1977. (Compl. ¶ 9.) The complaint also states that the "Library gave the Foundation permission" to use the "Library's Mark," from which the court can infer that this entity, in one form or another, used the mark before the Foundation.

Defendants correctly point out that the Complaint fails to plead exactly what kind of legal entity the Sacramento Public Library was prior to the creation of the Authority and the Foundation. However, the Complaint does allege that the rights to use the mark at issue belong to an entity now under the control of the Authority. (Compl. ¶ 1.) The Complaint further alleges that such an entity is the senior user of the mark. (Id. at 2 ("Library owns the name and mark . . . going back to at least as early as 1977."); see also id. ¶ 10.)

2. Use in Interstate Commerce

To plead a violation of Section 43(a) of the Lanham Act for trademark infringement, plaintiff must allege that the defendant's use of the mark was in interstate commerce. Summit Tech., Inc. v. High-Line Med. Instruments, Co., 933 F. Supp. 918, 928 (C.D. Cal. 1996). Defendants argue that the complaint lacks allegations establishing that the Library uses its alleged mark in interstate commerce. (Mot. at 16.)

However, plaintiff need not allege that plaintiff used the mark in interstate commerce. Instead, "[a]ll one need show for a district court to have jurisdiction of such a claim is that the infringing mark has been used in commerce which Congress can regulate." Drop Dead Co. v. S. C. Johnson & Son, Inc., 326 F.2d 87, 94 (9th Cir. 1963). Allegations that it was defendants who used the mark in interstate commerce therefore suffice to confer jurisdiction over the claim. See id.; see also Summit Tech., 933 F. Supp. at 928 ("Plaintiff must prove [that] defendant uses a designation [and that] the use was in interstate commerce.") (emphasis added).

The complaint sufficiently alleges use of the mark in interstate commerce. The Complaint pleads a use of the mark or "false designation" under the Lanham Act, by defendants, on the Internet. (Compl. ¶¶ 27, 28, 46, 55, 57.) Drawing all reasonable inferences in favor of the Library, such use constitutes use in interstate commerce. See United States v. Sutcliffe, 505 F.3d 944, 953 (9th Cir. 2007) ("As both the means to engage in commerce and the method by which transactions occur, the Internet is an instrumentality and channel of interstate

commerce.”). Further, the complaint alleges that the Foundation filed an application for U.S. federal registration of the mark (Compl. ¶ 16), which necessarily means the Foundation claims interstate use of the mark, see 15 U.S.C.A. §§ 1051(a)(3), 1127. The allegations therefore suffice to survive a 12(b)(6) motion.

3. Protectable Interest or Secondary Meaning

The Foundation next argues that the Library has failed to allege a protectable interest in its “descriptive mark” or secondary meaning. (Mot. at 17-20.) Specifically, defendants argue that plaintiff has failed to use the phrase “Sacramento Public Library” as a mark and instead merely uses the phrase to describe what the Library does and where it is located. Defendants also argue that even if plaintiff has used the phrase as a mark, plaintiff has failed to allege that the descriptive mark has secondary meaning. Absent a secondary meaning, plaintiff is not entitled to trademark protection. See Dep’t of Parks & Recreation for State of California v. Bazaar Del Mundo Inc., 448 F.3d 1118, 1127 (9th Cir. 2006).

As to defendant’s first argument, the court finds that plaintiff has sufficiently alleged that it uses the phrase “Sacramento Public Library” as a mark. The complaint states that the “Library owns the name and mark SACRAMENTO PUBLIC LIBRARY (‘Library’s Mark’ or ‘its Mark’) with rights in its Mark going back to at least as early as 1977.” (Compl. at 2:5-7; see also id. ¶ 10 (“[T]he Library shortened its name and mark to SACRAMENTO PUBLIC LIBRARY.”); id. (“[T]hat Mark became associated with the Library by the public.”); id. ¶ 11 (“[T]he Library has developed substantial goodwill in its Mark.”).) These

allegations are sufficient at this stage.

As to defendant's secondary-meaning argument, the law does not require plaintiff to specifically allege a secondary meaning to survive a motion to dismiss. Solid Host, NL v. Namecheap, Inc., 652 F. Supp. 2d 1092, 1107 (C.D. Cal. 2009) ("[A] plaintiff asserting ownership of a common law trademark need not specifically allege the existence of secondary meaning to survive a motion to dismiss."); see also Ashlar, Inc. v. Structural Dynamics Research Corp., No. C–94–4344 WHO, 1995 WL 639599, *5 (N.D. Cal. June 23, 1995) ("Although Graphsoft may ultimately be unable to prove a secondary meaning, the Court finds that Graphsoft is not required to plead secondary meaning in its countercomplaint.").

Notably, defendants cite no authority to the contrary relevant on a motion to dismiss. (See Mot. at 17-20.) Instead, at this stage, the court may infer secondary meaning –- or that the mark is associated with the plaintiff and its services –- from allegations of consistent public use of the mark. Solid Host, 652 F. Supp. at 1107-08. Here, plaintiff alleges that the Library has "continuously used [the mark] in commerce since" at least 1977. (Compl. ¶ 10.) Plaintiff also alleges that through this use the "[m]ark became associated with the Library by the public." (Id.) Accordingly, secondary meaning of the mark at issue is adequately pled.

4. Laches

Laches bars a claim for trademark infringement if the holder of the mark has unreasonably delayed in filing suit and defendant has been prejudiced by the delay. Jarrow Formulas,

Inc. v. Nutrition Now, Inc., 304 F.3d 829, 835 (9th Cir. 2002). “A laches determination is made with reference to the limitations period for the analogous action at law.” Id. Courts presume that laches is applicable if suit is filed outside of the analogous period of limitations. Id. “[T]he statute of limitations for a Lanham Act claim brought in conjunction with a claim of trademark dilution under state law is four years.” AirWair Int’l Ltd. v. Schultz, 84 F. Supp. 3d 943, 959 (N.D. Cal. 2015).

Defendants argue that plaintiff’s delay results in laches as a bar to both of plaintiff’s infringement claims. Specifically, defendants argue that the laches period began in 1984 (Mot. at 21-22), 2004 (Mot. at 22-23), or 2015 (Mot. at 23.) Because the complaint was filed in March of 2020, defendants argue that the claims are barred.

“[A] claim of laches depends on a close evaluation of all the particular facts in a case,” and it therefore “is seldom susceptible of resolution by summary judgment.” Kourtis v. Cameron, 419 F.3d 989, 1000 (9th Cir. 2005). “At the motion-to-dismiss phase, the obstacle to asserting a successful laches defense is even greater.” Id. Defendants must show that plaintiff “can prove no set of facts to avoid the [defense].” Planet Drum Found. v. Hart, No. 17-CV-02676-JCS, 2017 WL 4236932, at *7 (N.D. Cal. Sept. 24, 2017) (citing George Nelson Found. v. Modernica, Inc., 12 F. Supp. 3d 635, 655 (S.D.N.Y. 2014)).

Defendants have not made such a showing. The complaint repeatedly alleges that defendants undertook several actions without the Library’s knowledge and identifies several points in

time at which defendants' actions caused progressively more serious effects. See, e.g., Compl. ¶ 13 ("But in or around 2013, the Foundation began to fund activities and programs outside of the Library without the Library's knowledge or permission."); id. ¶ 23 ("[O]n April 17, 2017, without notice or consultation with the Library, the Foundation filed 'restated' Articles of Incorporation with the Secretary of State, purporting to expand upon the Foundation's specific purpose.")).

Accordingly, "defendants' laches defense will turn on factual questions about when [plaintiff] knew or should have known about the alleged infringement" that cannot be appropriately resolved on a motion to dismiss.[1] Cf. Planet Drum, 2017 WL 4236932, at *7. Defendants' assertions of different potential lengths of plaintiff's delay only underscore this point. Accordingly, the court will not dismiss Claims One and Two.

B. Claims Three and Four for UCL Violations

For an injured party to have the right to bring an action under the Unfair Competition Law ("UCL") or the False Advertising Law ("FAL"), that party must be a "person". Cal. Bus. & Prof. Code, §§ 17204, 17535. "The standing requirements under California's UCL and FAL are identical." Kwikset Corp. v. Superior Court, 51 Cal. 4th 310, 320-21 (2011).

The UCL defines "person" as "natural persons,

[1] Further, a laches defense requires that defendant establish that the delay was unreasonable and prejudiced defendant. See Jarrow Formulas, 304 F.3d at 835. Defendants offer no arguments to support either element. (See Mot. at 20-23.)

corporations, firms, partnerships, joint stock companies, associations, and other organizations of persons." Cal. Bus. & Prof. Code § 17201. The FAL defines "person" as "any individual, partnership, firm, association, or corporation." Id. § 17506.

Defendants argue that plaintiff does not have standing to sue under the UCL because plaintiff is not a "person" within the meaning of the statute. (Mot. at 24.) Plaintiff "does not dispute" that the Library is not a "person" under the UCL. (Opp'n at 17.) Accordingly, plaintiff does not have standing to bring its UCL claims. However, plaintiff has represented to the court that it will be able to prosecute these claims through a government entity that does have standing. (Id.) The court will therefore dismiss Claims Three and Four with leave to amend.

C. Claims Five and Six for Misrepresentation

"The elements of a claim for intentional misrepresentation are (1) a misrepresentation; (2) knowledge of falsity; (3) intent to induce reliance; (4) actual and justifiable reliance; and (5) resulting damage." Cisco Sys., Inc. v. STMicroelectronics, Inc., 77 F. Supp. 3d 887, 897 (N.D. Cal. 2014) (citing Lazar v. Superior Court, 12 Cal. 4th 631, 638 (1996)). "The essential elements of a claim for negligent misrepresentation are the same as for intentional misrepresentations, except that it does not require knowledge of falsity, but instead requires a misrepresentation of fact by a person who has no reasonable grounds for believing it to be true." Id. (citing West v. JPMorgan Chase Bank, N.A., 214 Cal. App. 4th 780, 792 (2013)).

Defendants argue that plaintiff fails to allege that

plaintiff relied on defendants' alleged misrepresentation. The Library alleged only that "donors" relied on the Foundation's misrepresentations, rather than the Library itself. (Compl. ¶¶ 82, 87.)

The court agrees with defendants and finds that plaintiff has not sufficiently pleaded justifiable reliance. "[A] plaintiff must plead that he or she actually relied on the misrepresentation." City & Cty. of San Francisco v. Philip Morris, Inc., 957 F. Supp. 1130, 1142 (N.D. Cal. 1997) (citing Mirkin v. Wasserman, 5 Cal. 4th 1082, 1088 (1993). Plaintiff's fraud and misrepresentation claims "cannot be maintained based on a third party's reliance." Id. Allegations that "as a result of the public's reliance on defendants' alleged misrepresentations, plaintiffs have suffered economic damages" is insufficient to sustain a misrepresentation claim. Cf. Philip Morris, 957 F. Supp. at 1142.

Plaintiff points to the rule that a defendant cannot "escape liability if he makes a representation to one person intending that it be repeated and acted upon by plaintiff." (Opp'n at 20 (quoting Geernaert v. Mitchell, 31 Cal. App. 4th 601, 605 (1995).) However, that rule has no application to the facts here because that theory of liability still requires plaintiff to have acted or failed to act in reliance on defendants' misrepresentations. The complaint does not allege that the Library took any detrimental action in reliance on the Foundation's misrepresentations. Accordingly, the court will dismiss Claims Five and Six.

D. Whether the Attorney General is a Necessary Party

             The Foundation contends that Claims Three, Five, Six, Seven, and Eight must be dismissed because they "implicate" the charitable trust doctrine and that with "respect to enforcement involving a charitable trust under California Law, the Attorney General" is a necessary party.  (Mot. at 28:14-15.)

             The cases cited by the Foundation do not support the Foundation's arguments that the Attorney General must be added as a party to this action.  In Holt v. College of Osteopathic Physicians & Surgeons, 61 Cal. 2d 750 (1964), the Attorney General declined to pursue a claim by plaintiffs against a charitable trust.  Notwithstanding the fact that the Attorney General declined to pursue such a claim, the court allowed the claim to proceed, finding that "although the Attorney General has primary responsibility for the enforcement of charitable trusts, the need for adequate enforcement is not wholly fulfilled by the Authority given him."  Id. at 753.

             Indeed, the Holt court notes that "the prevailing view is that the attorney general does not have exclusive power to enforce a charitable trust and that a trustee or other person having a sufficient special interest may also bring an action for this purpose."  Id.  Although the party  bringing suit must notify the Attorney General, the Attorney General's intervention in such a case is permissive, not mandatory.  Cal. Civ. Code § 5142.

             Here, the Library has sufficient interest in the Foundation and has notified the Attorney General of this action.  (See Docket No. 11-5.)  The Library has "significant and substantial beneficial interest in the Foundation" because the

Foundation, "holds millions of dollars in endowment funds for the benefit of the Library." (Compl. ¶ 1.) Further, the Library has a significant interest in the Foundation due to the Foundation's alleged obligations to distribute the proceeds of the endowments to the Library. (Id. ¶ 33.) These interests suffice to allow the Library to bring its claims independent of the Attorney General.

IT IS THEREFORE ORDERED that defendants' motion to dismiss (Docket No. 8) be, and the same hereby is, GRANTED as to Claims Three, Four, Five, and Six.

IT IS FURTHER ORDERED that defendants' motion to dismiss be, and the same hereby is, DENIED as to Claims One, Two, Seven, and Eight.

Plaintiff has twenty days from the date this order is signed to file a First Amended Complaint, if it can do so consistent with this Order.

Dated: August 3, 2020

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE